*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
March 23, 2023

v

No. 359822
Ottawa Circuit Court
LC No. 20-043987-FC

SCOTT ROBERT JELTEMA,

      Defendant-Appellant.

Before: M. J. KELLY, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

Defendant, Scott Robert Jeltema, appeals as of right his jury trial conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (sexual penetration of victim under 13 years of age by defendant 17 years of age or older). Defendant was sentenced to 300 to 480 months' imprisonment. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

On July 4, 2020, defendant and his wife, Malinda Jeltema, hosted a Fourth of July cookout and swimming party at their home. In attendance were several relatives, including defendant's seven-year-old twin nieces, LS1 and LS2. Two days after the gathering, the twins told their mother that defendant had touched them while they were swimming in the pool. LS2 reported that defendant moved the crotch of her bathing suit aside and looked at her genitalia. She said defendant was wearing goggles and he looked at her from below the surface of the water. LS1 recounted how defendant approached her while she was swimming and put his finger inside her vagina.

The twins' parents convened a family meeting where they confronted defendant about the twins' claims, which defendant denied. Even so, the parents reported the allegations to police. The twins each participated in a forensic interview and a medical examination. Defendant was later charged with the allegations relating to LS1 only.

During trial, the prosecution called a number of witnesses, including Dr. Debra Simms who explained her medical examination of LS1 following the allegations. Additionally, Barbara Welke

-1-

testified as an expert on forensic interviewing and child disclosures. She informed the jury about forensic interviewing techniques and the phenomena of delayed disclosure. The prosecution introduced some physical evidence, including a letter defendant had written indicating that he had planned to commit suicide. Defendant was convicted and sentenced as noted. This appeal followed.

## II. DR. SIMMS'S TESTIMONY

Defendant first argues that the trial court erred when it allowed Dr. Simms to testify about the statements that LS1 made during the medical examination. In his view, Dr. Simms's testimony was inadmissible hearsay that amounted to improper vouching for LS1's credibility. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

To preserve a claim of error for appellate review, "defendant had to object before the trial court and specify the same ground for objection that he asserts on appeal." *People v Clark*, 330 Mich App 392, 414; 948 NW2d 604 (2019). Defendant objects to Dr. Simms's testimony on two grounds. First, he argues that Dr. Simms did not examine LS1 for the purpose of a medical examination. Therefore, LS1's statements to Dr. Simms during the exam were not admissible as a hearsay exception under MRE 803(4). Second, defendant contends that Dr. Simms impermissibly vouched for LS1's credibility by testifying that her medical findings were consistent with what LS1 said during the examination. Defendant's first argument is preserved because it was raised in the trial court. Defendant's second argument is unpreserved because defense counsel did not object when Dr. Simms stated that her findings were consistent with what she had been told.

We review a trial court's decision to admit evidence for an abuse of discretion. *People v Roper*, 286 Mich App 77, 90; 777 NW2d 483 (2009). A trial court abuses its discretion when its decision falls outside the range of reasonable outcomes. *Clark*, 330 Mich App at 432. This Court reviews de novo whether the trial court properly interpreted and applied the rules of evidence. *People v McFarlane*, 325 Mich App 507, 517; 926 NW2d 339 (2018). A trial court necessarily abuses its discretion when it admits evidence that was inadmissible as a matter of law. *Roper*, 286 Mich App at 91. This Court reviews the findings underlying a trial court's evidentiary decision for clear error. See *People v Barrera*, 451 Mich 261, 269; 547 NW2d 280 (1996). A finding is clearly erroneous when this Court is left with the definite and firm conviction that a mistake was made. *Clark*, 330 Mich App at 415.

Defendant's unpreserved argument is reviewed for plain error. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.*

## B. HEARSAY

Defendant first challenges Dr. Simms's testimony, arguing it contained LS1's hearsay statements for which no exception applied. Hearsay is defined as a "statement, other than the one

made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). It is inadmissible unless an exception applies. MRE 802. One such exception, outlined at MRE 803(4), provides: "Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment."

In *People v Shaw*, 315 Mich App 668, 674-675; 892 NW2d 15 (2016), this Court explained the purpose of this exception:

> Statements made for the purpose of medical treatment are admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care. The rationale for MRE 803(4) is the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient. An injury need not be readily apparent. Moreover, particularly in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment. [quotation marks, alterations, and citations omitted.]

The prosecutor gave notice that he intended to elicit testimony from Dr. Simms about LS1's statements under MRE 803(4). Dr. Simms was called to testify at a pretrial hearing on the matter. She testified that she was a board-certified child abuse pediatrician employed at Ottawa County Children's Advocacy Center. In this role, she examines children following allegations of abuse. There are three reasons for this examination: (1) to examine the child's body for possible injury; (2) to assess the child for any sign of infection; and (3) to address any of the child's emotional reactions to their abuse. As part of this process, Dr. Simms asks children about the identity of their assailant. She explained that the medical purpose of this question was to assess for "sexually transmitted disease risks."

Dr. Simms examined LS1 on July 22, 2020. The doctor asked LS1 why she needed to come see her. LS1 replied, "[she] was swimming. He—and then clarified 'he' was our cousin-uncle Scott . . . touched my private. [LS1] explained that this happened with his fingers for a minute . . . . [LS1] clarified that it occurred under the bathing suit and it was inside." Dr. Simms then asked LS1 whether she had any symptoms related to defendant's touching, to which LS1 replied "that she didn't like it but that she denied that there was any pain or bleeding." At the end of the hearing, the trial court concluded Dr. Simms's testimony was admissible under the MRE 803(4) hearsay exception. At trial, Dr. Simms recounted LS1's description of the offense, specifically that defendant had put his finger in LS1's vagina.

On appeal, defendant directs our attention to *Shaw*, 315 Mich App at 674-675, arguing that LS1's statements to Dr. Simms were not for the purpose of seeking medical treatment. In *Shaw*,

we concluded the victim's statements to a doctor following a forensic examination were not admissible under MRE 803(4), reasoning:

> First, the examination by [the doctor] did not occur until seven years after the last alleged instance of abuse, thereby minimizing the likelihood that the complainant required treatment. Second, the complainant did not seek out [the doctor] for gynecological services. Rather, she was specifically referred to [the doctor] by the police in conjunction with the police investigation into the allegations of abuse by defendant. And during the seven years since the last alleged incident of abuse, she had seen a different physician, who was not called as a witness, for gynecological care. [*Id*. at 675 (footnote omitted).]

Defendant likens this case to *Shaw*, arguing Dr. Simms's examination was not borne out of any need for medical treatment. In making this argument, he notes LS1 did not seek immediate medical treatment, but rather waited several weeks. He also opines that LS1 only underwent the examination because police recommended it, and not because LS1 needed any actual medical treatment.

The trial court addressed each of these issues. Regarding the delay between the day of the abuse until the day of examination, it stated: "Not everybody goes to the ER. If you're bleeding in acute distress, you go to the ER, but it's not unusual to have a legitimate medical appointment a few days or a couple of weeks after the event. It's just that's how it happens." With respect to the question of whether LS1 needed this examination, it opined that "seeking treatment would certainly be appropriate and having a physical examination would certainly be appropriate and asking who did it would certainly be appropriate as Dr. Simms pointed out to find out if there's— we have to find out for sexually transmitted diseases."

These findings are supported by the record. The evidence shows that immediate medical care was unnecessary because LS1 was not suffering acute physical distress. Further, Dr. Simms testified that as a specialist in child abuse, she had special equipment and training specific to LS1's needs at the time—in particular whether LS1 suffered from any injuries or illnesses relating to the abuse. That police directed LS1 to Dr. Simms's office does not mean that the reason LS1 sought care with Dr. Simms was for anything other than her medical needs. We conclude the trial court did not abuse its discretion when it allowed Dr. Simms to testify about LS1's statements during the medical examination.

## C. CREDIBILITY

Defendant also argues that the trial court erred when it allowed Dr. Simms to testify that her medical findings were consistent with LS1 having been sexually assaulted. He argues that Dr. Simms's testimony amounted to improper vouching for LS1's credibility.

Our Supreme Court has held that an expert qualified by training and experience relative to the treatment of sexual assault can opine whether a complainant has been sexually assaulted when the opinion has its basis in physical findings and the complainant's medical history. *People v Thorpe*, 504 Mich 230, 255; 934 NW2d 693 (2019). A medical expert may not, however, offer an opinion that the complainant was sexually assaulted when the opinion is based only on the

-4-

complainant's statements to the medical professional. *Id*. Our Supreme Court explained that an opinion premised solely on the complainant's statement is nothing more than an expression of the doctor's opinion that the complainant was telling the truth, and that such a determination should be left for the factfinder. *Id*.

At trial, Dr. Simms testified that, after she took LS1's history, she performed a "full examination" on LS1. The prosecutor inquired whether there were any signs of "injury" to LS1's "vaginal area." Dr. Simms testified that LS1 had "no injuries to the vaginal area" but that she did have a "pinkish skin discoloration" on her labia that was consistent with a rash. The prosecutor then asked, "And based on your knowledge, training, and experience based on what [LS1] told you, were your findings consistent?" Dr. Simms responded, "Yes, sir." There was no further elaboration, and defense counsel did not object or cross-examine Dr. Simms about her response to that question.

Contrary to defendant's contention on appeal, Dr. Simms did not testify that LS1 "had been sexually assaulted." Dr. Simms did not offer an opinion as to whether LS1 had been digitally penetrated, she stated that she found no evidence of physical injury to LS1's genitalia. Dr. Simms answered "yes" when asked whether her findings were consistent with what LS1 told her about the offense, but she did not diagnose sexual abuse. Rather, Dr. Simms merely agreed that a finding of no injury was consistent with LS1's statement that she had been digitally penetrated. Defendant's arguments are not persuasive.

## III. EXPERT TESTIMONY

Defendant next argues that trial counsel was ineffective for failing to object to Welke's testimony. In his view, Welke's testimony was irrelevant and unfairly prejudicial. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

To preserve a claim of ineffective assistance of counsel, the defendant must move for a new trial or for an evidentiary hearing. *People v Sabin*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Defendant did neither. Therefore, our review is limited to mistakes apparent from the record. *People v Carll*, 322 Mich App 690, 702; 915 NW2d 387 (2018). "[A] defendant's ineffective-assistance-of-counsel claim is a mixed question of fact and constitutional law." *Id*. (quotation marks and citation omitted). Questions of fact are reviewed for clear error and questions of constitutional law are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

### B. LAW AND ANALYSIS

Criminal defendants are entitled to effective assistance of counsel. US Const, Am VI; see also Const 1963, art 1, § 20. To prove ineffective assistance of counsel, a criminal defendant must show that their attorney's representation fell below an objective standard of reasonableness under prevailing professional norms. *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Further, a defendant has to demonstrate that they were prejudiced by counsel's performance; to do so, the defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

## 1. RELEVANCY

Defendant maintains that Welke's testimony was irrelevant because the process of forensic examination was not at issue in the case.

Only relevant evidence is admissible at trial. MRE 402. Relevant evidence is defined as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. To be relevant, a material fact does not have to pertain to an element of the crime; evidence is relevant if it involves something within the range of litigated matters in controversy. *People v Mills*, 450 Mich 61, 67-68; 537 NW2d 909 (1995). A defendant's theory of defense can make otherwise irrelevant evidence relevant. See *People v VanderVliet*, 444 Mich 52, 75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994) ("The relationship of the elements of the charge, the theories of admissibility, and the defenses asserted governs what is relevant and material."). If a witness "is offering relevant testimony, whether that witness is truthfully and accurately testifying is itself relevant because it affects the probability of the existence of a consequential fact." *Mills*, 450 Mich at 72.

Welke testified at trial about the nature and importance of forensic interviewing. She stated that it was a "legally sound, developmentally sensitive—meaning it's geared toward the age of a child—method of collecting factual information regarding an allegation of abuse." She stated that a forensic interview was important because, in most cases involving allegations of child abuse, there were no eye witnesses and no physical evidence. As such, the "child's words" were the only description of the offense. She then described the protocols that must be used for a proper forensic interview. On cross-examination, Welke stated that the purpose of forensic protocols is to prevent adults from leading children or suggesting answers to the child when questioning them. She agreed that there is a danger that an adult could repeatedly feed a child false information before a forensic interview

Although defendant did not outright claim LS1 was lying about the sexual assault, it was strongly implied. For example, during opening statements defense counsel explained that there was a "natural human tendency" to believe a child's allegations of abuse, but that "[n]othing else in comparison to the statements of the little girls makes any sense." He later suggested that LS1 may have been influenced by other adults to make these allegations. He argued, for example, that LS1 might have referred to her genitalia as her vagina at trial when she previously used the less precise term "private parts" because she picked up that word from Dr. Simms. Consequently, whether LS1 was being truthful or was otherwise mistaken was clearly at issue at trial, and any evidence tending to undermine or bolster her credibility would be relevant. See *Mills*, 450 Mich at 72. Similarly, whether she might have been influenced by the adults who questioned her— including the forensic interviewer—was a matter at issue at trial. See *VanderVliet*, 444 Mich at 75 (stating that a defense theory can cause evidence to become relevant). Because Welke's testimony was relevant, counsel was not ineffective for failing to challenge the testimony on this basis. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

## 2. VOUCHING

Defendant next argues that Welke improperly vouched for LS1's credibility and that defense counsel was ineffective for failing to object. "The trial court has an obligation under MRE 702 to ensure that any expert testimony admitted at trial is reliable." *People v Dobek*, 274 Mich App 58, 94; 732 NW2d 546 (2007) (quotation marks and citation omitted). To admit expert testimony, a trial court must question whether the testimony "(1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012).

Expert testimony is even more limited in circumstances involving a child's allegations of sexual abuse. In *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857, amended 450 Mich 1212 (1995), our Supreme Court placed limits on expert testimony, stating: "(1) an expert may not testify that the sexual abuse occurred, (2) an expert may not vouch for the veracity of a victim, and (3) an expert may not testify whether the defendant is guilty." However, expert testimony is permissible under two circumstances:

> (1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility. [*Id.* at 352-353.]

Again, Welke testified about the purpose and process of a forensic interview of a child. She said it is a "method of collecting factual information regarding the allegations of abuse." In Welke's opinion, "a forensic interview is very important because it's the type of crime where it's the child's words that are going to be the only way of knowing what happened." She also noted how children tend to disclose their abuse "incrementally"—that is, children do not generally tell the "full story" of the abuse, but "tell little bits and pieces" over time. Importantly, Welke did not render any opinions about LS1's forensic interview. Indeed, Welke never met LS1, nor had she interviewed LS1.

Welke's testimony fit within the rules described in *Peterson*. Her testimony was limited to general information about the forensic interview process. And, her explanation about delayed disclosure was permissible to explain why LS1 did not immediately report the assault to another adult. Thus, defense counsel was not ineffective for failing to challenge Welke's testimony as an impermissible expert opinion.

Even so, defendant likens this case to our unpublished and not binding decision in *People v Brooks*, unpublished per curiam opinion of the Court of Appeals, issued January 28, 2021 (Docket No. 349955). In *Brooks* the expert witness explained that the forensic interview was a "truth-seeking" process, and she told the jury that she had referred the child-victim to counseling. *Id.* at 8. She also explained "that she 'definitely' referred children to counseling who disclosed sexual abuse." *Id.* We concluded that this was improper vouching because it led to the

impermissible presumption that the child's allegations were credible simply because the child had disclosed allegations of abuse during the interview. *Id*. at 9.

This case is unlike *Brooks*. Welke did not interview LS1, Welke did not state that an interviewer would invariably refer a child for counseling after an interview if the child disclosed abuse. Welke did not describe the forensic-interview process as a "truth-seeking" process, and Welke candidly admitted that many forensic interviews end with no disclosure. There was nothing about Welke's testimony that was improper or that could reasonably be interpreted as vouching for the credibility of LS1.

In sum, defendant has not identified a valid basis for objecting to Welke's testimony. Welke's testimony was relevant and admissible. Moreover, she did not improperly vouch for any witness's credibility. Consequently, defense counsel cannot be faulted for failing to object to Welke's testimony on these bases. See *Ericksen*, 288 Mich App at 201.

## IV. SUICIDE LETTER

Defendant next argues the trial court abused its discretion when it admitted a letter indicating he planned to commit suicide. We disagree.

## A. STANDARD OF REVIEW

This Court reviews a trial court's decision to admit evidence for an abuse of discretion. *Roper*, 286 Mich App at 90. A trial court abuses its discretion when its decision falls outside the range of reasonable outcomes. *Clark*, 330 Mich App at 432. This Court reviews de novo whether the trial court properly interpreted and applied the rules of evidence. *McFarlane*, 325 Mich App at 517.

## B. LAW AND ANALYSIS

Before trial, defendant moved to exclude several letters he had written to family members which indicated his intent to commit suicide. The trial court excluded many of the letters, but allowed into evidence one letter from defendant to his parents and his wife's parents. It read:

> To Mom & Dad J, Mom & Dad S
>
> I am truly sorry for doing this and being a failure to my family. I just could not bear it any longer. I am a weak man and have no fight left in me. Please forgive me. This is not anyone[']s fault but me. Don't blame yourselves. I truly love all of you and have said thanks to God for you. Please take care of [Malinda] and the girls for me. Encourage them to forget me and move on.
>
> Love,
>
> Your son Scott.

On appeal, defendant argues the trial court abused its discretion in admitting the letter because the letter was both irrelevant and prejudicial. We address each argument in turn.

-8-

## 1. RELEVANCY

Again, relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. And, only relevant evidence is admissible at trial. MRE 402. "Evidence that reflects a defendant's consciousness of guilt is relevant." *People v Parrott*, 335 Mich App 648, 680; 968 NW2d 548 (2021). The fact that the evidence might also give rise to inferences other than consciousness of guilt does not preclude the admission of the evidence; it is for the jury to determine whether the statements were in fact evidence that the defendant was conscious of his or her guilt. *Id*.

The trial court did not err when it determined that this letter supported an inference of defendant's consciousness of guilt relating to the crime at issue. Alternatively, the letter also supported an inference that defendant was in despair and was not expressing consciousness of his guilt. However, the mere fact that the jury might interpret the statements in the letter as something other than evidence that defendant's consciousness of guilt did not preclude its admission; rather, it was for the jury to determine what inferences were to be drawn from the letter. See *id*.

Defendant contends on appeal that this letter was not relevant because he did not admit guilt or provide information that gave rise to inferences about the crime itself. That, however, is not the standard. Evidence does not need to rise to the level of a direct admission of guilt or implicate an element of the offense to be admissible as evidence of consciousness of guilt. See, e.g., *People v Schaw*, 288 Mich App 231, 237; 791 NW2d 743 (2010) (stating that evidence that a defendant tried to influence a witness may be admitted as consciousness of guilt); see also *People v Casper*, 25 Mich App 1, 7; 180 NW2d 906 (1970) (recognizing that evidence of flight, procuring perjured testimony, and destroying evidence are admissible as evidence that the defendant was conscious of guilt even though the evidence might also be consistent with innocence, and stating that it is for the jury to determine the meaning of the evidence).[1] The letter at issue was capable of supporting an inference of guilt and was relevant and admissible for that purpose. See MRE 401; MRE 402; *Parrott*, 335 Mich App at 680.

Defendant suggests that the trial court was precluded from finding an inference of the consciousness of guilt from the letter admitted because he introduced evidence of other, contemporaneous letters in which he emphatically denied the allegations against him. Even though defendant denied the allegations in other letters, he also expressed suicidal ideation and attempted to elicit sympathy for his plight from the potential recipients. Contrary to defendant's contention, the other letters permitted an inference that defendant was conscious of his guilt notwithstanding his denial of the allegations. A reasonable jury reviewing those letters could infer that defendant expressed suicidal ideation and attempted to elicit sympathy as a means for avoiding responsibility for his actions and not because he was actually innocent. Accordingly, the mere fact that defendant

---

[1] Decisions published before November 1, 1990, are not binding on this Court. See MCR 7.215(J)(1). However, those decisions are entitled to deference under traditional principles of stare decisis and should not be lightly disregarded. See *People v Bensch*, 328 Mich App 1, 6; 935 NW2d 382 (2019).

denied the allegations in some letters did not preclude them from being interpreted as consciousness of guilt.

## 2. PREJUDICE

Defendant further contends that the letter was unfairly prejudicial within the meaning of MRE 403. He believes the jury was not provided the full context because the trial court admitted only one letter, but not the other letters. Relevant evidence may be excluded when, in relevant part, the "probative value" of the evidence "is substantially outweighed by the danger of unfair prejudice." MRE 403. Evidence is not unfairly prejudicial simply because it damages the opposing party's case. See *Parrott*, 335 Mich App at 681. Evidence is unfairly prejudicial when there is a danger that the jury will give marginally probative evidence undue or preemptive weight. *Id*.

As discussed, the letter permitted an inference that defendant was conscious of his guilt, but also permitted inferences that were consistent with innocence. On balance, the letter's probative value was limited and it did not unfairly interject prejudicial considerations extraneous to this case. Therefore, the admission of the letter, but not others, was not unfairly prejudicial. See *Parrott*, 335 Mich App at 681.

Yet, even if the trial court had allowed the other letters into evidence to provide context for this letter, the evidence that defendant sought sympathy and expressed suicidal ideation could still be interpreted as evidence of a guilty conscience notwithstanding his denials. For that reason, it is not clear that the admission of the other letters would have so altered the balance that the jury would not have made an adverse inference from the suicide letter. The trial court's decision to admit one letter but not others fell within the range of reasonable outcomes; as such, the admission of the letter was not an abuse of discretion. See *Clark*, 330 Mich App at 432.

## V. FAMILY DYNAMICS

Defendant argues the prosecutor erred[2] because he improperly elicited testimony about his family dynamics and then used that testimony in his closing arguments. He also contends defense counsel was ineffective for failing to object to the prosecutor's behavior. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

"To preserve a claim of prosecutorial [error], the defendant must make a timely and specific objection to the conduct at trial." *Clark*, 330 Mich App at 433. Defendant did not object to any

---

[2] Defendant alleges the prosecutor committed "misconduct." However, the term "prosecutorial misconduct" has become a term of art to describe any error by a prosecutor. *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). Claims of error by a prosecutor are "better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *Id*. at 88. In this case, defendant's arguments are more aligned with allegations of "prosecutorial error," rather than "prosecutorial misconduct." Therefore, we use the word "error," rather than "misconduct."

of the questions or comments about which he now complains. Therefore, he did not preserve any claims of error involving this issue. Typically, we review de novo whether a prosecutor's conduct deprived the defendant of a fair and impartial trial. See *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). However, this Court reviews such unpreserved claims for plain error that affected the defendant's substantial rights. See *Carines*, 460 Mich at 763.

Defendant also claims that defense counsel's failure to object to the prosecutor's questions and comments amounted to ineffective assistance of counsel that was apparent on the record alone. Defendant argues that because the error is apparent from the record alone, he did not have to take any special steps to preserve a claim of ineffective assistance of counsel apparent from the record. See *Sabin*, 242 Mich App at 658-659. Again, we review de novo as a question of constitutional law whether a particular act or omission fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant's trial. *Strickland*, 466 US at 688.

## B. LAW AND ANALYSIS

The test for prosecutorial error is whether the defendant was denied a fair and impartial trial. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). It is the defendant who bears the burden of demonstrating an error resulting in a miscarriage of justice. *Id*. The prosecutor's role is to "seek justice and not merely convict." *Dobek*, 274 Mich App at 63. A prosecutor can jeopardize a defendant's right to a fair trial by interjecting issues broader than the defendant's guilt or innocence. *Id*. at 63-64. This Court examines such claims on a case-by-case basis and on the whole record to determine whether the conduct at issue was improper and deprived the defendant of a fair trial. *Id*.

Defendant argues the prosecutor improperly elicited irrelevant testimony about the family dynamics from several witnesses. The prosecutor asked most of the family witnesses to distinguish the relationship between the family members before and after the sexual abuse allegations were made against defendant. The witnesses testified that the families had gotten along well and interacted frequently before the allegations. The witnesses agreed that the families had little to no relationship after the allegations were made against defendant. Defendant contends it was "irrelevant that [LS1] and her family had 'lost' their relationship with other family members."

The prosecutor did not improperly elicit testimony about the change in the family dynamics after the assault allegations. In his opening statement, defense counsel suggested LS1 lied about the sexual assault because her allegations against defendant defied "common sense." In response, the prosecutor elicited evidence that the families had gotten along well and interacted frequently before the allegations; thereby suggesting to the jury that there was no animosity or other family dynamic that might provide a motive to lie. "A prosecutor may fairly respond to an issue raised by the defendant." *Brown*, 279 Mich App at 135. Defendant opened the door to questions of LS1's credibility and it was appropriate for the prosecutor to elicit testimony showing she had no motive to lie. Therefore, the testimony about the relationship between the two families was relevant and the prosecutor did not commit misconduct on this basis.

Defendant also argues the prosecutor improperly vouched for LS1 during his closing arguments by repeatedly emphasizing that LS1 and her family endured considerable suffering as a result of these allegations. A prosecutor may not vouch for the credibility of a witness by

-11-

suggesting that he or she has some special knowledge that the witness is testifying truthfully. *People v Bahoda*, 448 Mich 261, 276-277; 531 NW2d 659 (1995).

The prosecutor began his closing arguments by noting the evidence concerning "how difficult it [had] been for the family, how difficult it's been to lose a father, lose grandparents, lose cousins." The prosecutor repeatedly argued that the evidence showed that it would have been much easier for LS1 to change her story and "say nothing happened to her" under those circumstances. He similarly argued that it would have been easier for LS2 to have not told "her story," or for the twins' parents to not press the issue. What was not easy, the prosecutor asserted, was for them "to lose their entire family" by telling their "stories." The prosecutor stated that the "hard way" was these "two girls telling their truth about what happened to them by uncle Scott."

There was nothing improper about this introduction to the prosecutor's review of the evidence. The prosecutor did not imply that he had some special knowledge that the twins or their parents were telling the truth. See *Bahoda*, 448 Mich at 276-277. The prosecutor suggested that the evidence that LS1 and LS2 persisted with their allegations, even though it cost them and their family dearly, was evidence tending to show that they were worthy of belief. A reasonable jury could infer from the totality of the evidence that even an adult might choose to recant allegations of abuse in the face of being ostracized by one's whole extended family. Yet the children did not recant; instead, they continued to assert their allegations. The prosecutor had every right to argue that this evidence made his witnesses worthy of belief. *Dobek*, 274 Mich App at 66.

Defendant also suggests that the prosecutor improperly stated that LS1 told *her* "truth." The prosecutor reminded the jury that it had seen LS1—an eight-year-old child—approach the stand and saw her demeanor. He suggested that her demeanor was indicative of veracity: "When we talk about the credibility of witnesses and how you gauge someone's credibility, the physical reactions, how they're acting, how they handle themselves, appropriate of that of an eight-year-old girl describing what happened to her." The prosecutor made similar arguments about LS2's demeanor.

The prosecutor's remarks must be understood in context. See *People v Ackerman*, 257 Mich App 434, 452; 669 NW2d 818 (2003) (stating that a prosecutor's remarks must be examined and evaluated in the context within which they were made). The context here does not suggest that the prosecutor was trying to convince the jury that he had special knowledge that LS1—or any other witness—was testifying truthfully. Rather, the prosecutor argued that his witnesses conducted themselves in a way that was more consistent with telling the truth. He also indicated that they did so in the face of a family situation that strongly encouraged them to recant their allegations, or, at the very least, to minimize what happened. Despite the pressure by the extended family, he noted, the children told the jury what happened to them and did not waver. It was entirely appropriate for the prosecutor to argue the significance of this evidence and urge the jury to find the twins and their parents worthy of belief. *Dobek*, 274 Mich App at 66.

The fact that the prosecutor referred to the twins as telling "their truth[s]" also did not suggest that he had special knowledge that either was being truthful. In common parlance, when a person speaks of someone telling his or her truth, the speaker does not suggest that he or she has special knowledge that the person about whom he or she is speaking is relating the events as the events actually happened. Rather, the reference is usually an assertion that the speaker is speaking

-12-

about his or her experiences. Taken in the context of the entire argument, the prosecutor's remark highlighted the evidence that showed that LS1 and LS2 were not fabricating their testimony but were instead worthy of belief. There was nothing improper about that argument. See *id*.

The same is true for the prosecutor's comments that even defendant would not state that the children were liars. The prosecutor argued in rebuttal that defendant's own statements corroborated everything that the twins stated "except for the one part." He noted that defendant himself refused to accuse the twins of lying, and he argued that there was a good reason for that: "He's been accused of this, ladies and gentlemen, and he can't say that those girls are lying because they're telling the truth." It is obvious that the prosecutor was not arguing that he had special knowledge that the children were being truthful. Rather, the prosecutor argued that the jury could infer from the fact that defendant himself refused to say that the children were lying was because they accurately described what happened; that is, the prosecutor argued that the evidence that defendant did not accuse the children of lying was itself evidence that the children were credible. That argument was also not improper. See *id*.

Defendant further contends that the prosecutor's comments about the evidence that the extended family ostracized LS1 and her family constituted an improper appeal to sympathy. A prosecutor does not commit error by discussing evidence that a victim or victims suffered harm or loss instead. A prosecutor "commits [error] when he or she invites jurors to suspend their powers of judgment and decide the case on the basis of sympathy or civic duty" rather than the evidence. *People v Lane*, 308 Mich App 38, 66; 862 NW2d 446 (2014).

In his closing argument, the prosecutor discussed the evidence that the twins and their family had suffered loss and gone through stressful circumstances as a result of coming forward with the allegations. However, he did not ask the jury to suspend their powers of judgment and find defendant guilty on that basis. See *id*. Rather, the prosecutor argued that the evidence that the twins continued to relate their version of events—despite the high cost to them and their family—was evidence that made it more likely that they were telling the truth. *Dobek*, 274 Mich App at 66. This was permissible.

In any event, the trial court specifically instructed the jurors that they had "taken an oath to return a true and just verdict based only [on] the evidence and my instructions on the law." The court further instructed them that they "must not let sympathy or prejudice influence [their] decision in any way." The court also repeatedly admonished the jury to decide the case on the basis of the properly admitted evidence, and instructed it that the lawyers' arguments were not evidence. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *Abraham*, 256 Mich App at 279. The trial court's instructions protected defendant's rights to the extent that the prosecutor's argument might have engendered sympathy for LS1 and her family.

Defendant further contends that the prosecutor misrepresented testimony by Willard Smit, LS1's grandfather and defendant's father-in-law. Defendant argues that the prosecutor impermissibly suggested that Willard no longer loved his grandchildren because he spoke about loving them in the past tense. During closing arguments, the prosecutor stated that Willard "loved them in the past tense. I loved them, but not anymore." The prosecutor framed his understanding of Willard's testimony as an example of the old way of thinking about allegations of sexual abuse.

It is true that Willard testified that he "loved" his grandchildren. However, Willard immediately clarified his statement and said: "I still love them all." Accordingly, the prosecutor misstated Willard's testimony. Even so, there was evidence that Willard placed his support for defendant before his love for his grandchildren. Willard said, for example, that he did not believe LS1's story, and he characterized the decision to report the allegations to the police department as "totally nonsense." He agreed that he cut off all communication with LS1's family over what he perceived to be the nonsensical allegations. Given this testimony, there was evidentiary support for the prosecutor's argument that Willard's testimony represented an antiquated reaction to accusations of sexual abuse that was not consistent with love for LS1. Nevertheless, the prosecutor did inaccurately summarize Willard's profession of love for his grandchildren, which was improper. See *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). But, the trial court's instruction to the jury that the lawyers' arguments were not evidence cured whatever minimal prejudice defendant suffered by the prosecutor's mischaracterization of Willard's statement. See *Abraham*, 256 Mich App at 279.

Defendant has not established that the prosecutor's conduct deprived him of a fair trial, *Dobek*, 274 Mich App at 63-64, let alone that the prosecutor's error amounted to plain, outcome-determinative error, *Carines*, 460 Mich at 763. Therefore, defense counsel cannot be faulted for failing to object to the questions and arguments premised on that evidence. See *Clark*, 330 Mich App at 426. Thus, defendant has not shown that there is a reasonable probability that, but for defense counsel's failure to object to that one misstatement, the jury would have found him not guilty. See *Strickland*, 466 US at 688.

## VI. LS2'S TESTIMONY

Defendant argues the trial court abused its discretion when it allowed LS2 to testify about defendant's actions and defense counsel was ineffective for failing to object to LS2's testimony. We disagree.

### A. STANDARD OF REVIEW

This Court reviews a trial court's decision to admit evidence for an abuse of discretion. *Roper*, 286 Mich App at 90. A trial court abuses its discretion when its decision falls outside the range of reasonable outcomes. *Clark*, 330 Mich App at 432. This Court reviews de novo whether the trial court properly interpreted and applied the rules of evidence. *McFarlane*, 325 Mich App at 517. Because this claim of error was not preserved by an objection below, this Court reviews the trial court's decision to allow the testimony for plain error that affected defendant's substantial rights. See *Carines*, 460 Mich at 763.

Defendant also argues that defense counsel was ineffective for failing to object to LS2's testimony. This Court reviews de novo as a question of constitutional law whether a particular act or omission fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant's trial. *Strickland*, 466 US at 688.

### B. LAW AND ANALYSIS

Generally-speaking, evidence that a defendant committed a prior bad act is inadmissible to prove a propensity to commit such acts. See *People v Galloway*, 335 Mich App 629, 637; 967

NW2d 908 (2020). For example, MRE 404(b) allows evidence of other crimes to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," but prohibits such evidence for propensity purposes. In cases involving the sexual assault of a child, however, there is a statutory exception to this rule. MCL 768.27a(1) provides, in relevant part that, "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." Again, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Because a defendant's propensity to commit a crime makes it more probable that he committed the charged offense, MCL 768.27a permits the admission of evidence that MRE 404(b) precludes." *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012). Even so, "evidence admissible pursuant to MCL 768.27a may nonetheless be excluded under MRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.*, quoting MRE 403.

Defendant posits LS2's testimony about her interaction with defendant in the pool was inadmissible because: (1) LS2's allegation was not a listed offense under MCL 768.27a(1); (2) LS2's testimony was irrelevant because LS2's allegations were different from LS1's allegations; and (3) the testimony was unfairly prejudicial and was only presented to "inflame[]" the jury's sympathy. He argues defense counsel was ineffective for failing to object to LS2's testimony. We do not agree the testimony was inadmissible; therefore, counsel was not ineffective for failing to object to it.

Regarding defendant's first argument, a listed offense means that term as defined under MCL 28.722. See MCL 768.27a(2)(a). CSC-I is a listed offense. See MCL 28.722(v)(*iv*) (defining Tier III offense to include a violation of MCL 750.520b). Additionally, the conduct that LS2 described was arguably an assault with the intent to commit sexual conduct in violation of MCL 750.520g, which is also a listed offense under MCL 28.722(v)(*v*). Accordingly, the prosecutor could properly admit LS2's testimony because it was a listed offense under the statute.

The next issue is relevancy—defendant argues "[LS2's] claim of [defendant] looking at her vagina did not make her twin sister [LS1's] claim of [defendant] penetrating her vagina more or less probable when they were in the same pool[,] at the same time[,] with their father mere feet away." In his view, the twins' stories are "vastly different" and therefore LS2's story was irrelevant to proving LS1's story. It is true that the twins' stories are somewhat different. LS2 reported that defendant moved her bathing suit aside a looked at her genitalia and that he did this several times that day. LS1, meanwhile, recounted that at one point during the pool party, defendant inserted his finger into her vagina. The issue at trial was whether defendant in fact inserted his finger into LS1's vagina. Although L2's allegation was not exactly the same as her sister's, that does not make LS2's testimony any less relevant. Indeed, both girls alleged defendant used his hands to manipulate the crotch area of their bathing suits. The fact that one allegation involved penetration and the other did not, is not necessarily dispositive.

Further, LS2 testified that defendant engaged her in a pool game to have sexual contact with her. LS1 similarly testified that defendant pulled her back from the area of the stairs and

-15-

inserted his finger in her vagina while playing in the pool. Malinda, defendant's wife, testified that defendant was playing pool games with the children, and there was evidence that defendant told others that he was playing a "crab game" or "shark game" with the girls. LS2's testimony was, therefore, relevant to establish that defendant employed pool games to engage in sexual contact with the girls. See *People v Sabin*, 463 Mich 43, 63-66; 614 NW2d 888 (2000). LS2's testimony was also probative that LS1 was not mistaken or fabricating her testimony about the assault. Her testimony suggested that defendant engaged in sexual contact with the girls at about the same time lent credibility to LS1's claim that defendant pulled her away from the stairs and inserted his finger into her vagina. LS2's testimony also provided context to the testimony concerning LS1's revelation of the abuse.

Defendant's last argument is that LS2's testimony was unfairly prejudicial and should have been excluded at trial. Analysis of whether evidence is unfairly prejudicial involves a balancing of the probative versus prejudicial nature of the evidence. *Watkins*, 491 Mich at 486. Usually, propensity evidence is weighed in favor of prejudice. *Id*. However, in cases involving evidence admissible under MCL 768.27a, "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id*. at 487. Our Supreme Court explained that "other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference." *Id*.

To be unfairly prejudicial, the evidence must be more than merely damaging to the defendant's case. *People v Cowhy*, 330 Mich App 452, 467-468; 948 NW2d 632 (2019). To warrant exclusion, the evidence must be such that there is a tendency that the jury will give the evidence undue or preemptive weight or when it would otherwise be inequitable to allow the use of such evidence. *Id*. at 468. Evidence is unfairly prejudicial when it is marginally probative and there is a danger that the jury will give it weight that is substantially out of proportion to its logically damaging effect. See *Mills*, 450 Mich at 75-76. In weighing the prejudicial nature of the evidence, the considerations include, but are not limited to:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

As to this argument, defendant claims LS2's testimony was solely meant to "inflame[] the jury's sympathy" and not because the testimony presented any probative evidence. We do not agree. As discussed, LS2's testimony was probative to show defendant's propensity to commit sexual crimes against young children. It also provided important context for both the nature of the games that defendant played in the pool and the circumstances surrounding LS1's revelation of abuse. To be sure, LS2's testimony about what happened to her was different than what happened to LS1, but it was not so dissimilar that it weighed against admission. See *Watkins*, 491 Mich at 487-488 (listing factors to consider when determining whether to exclude propensity evidence). The incidents occurred contemporaneously as part of an ongoing pool game. Moreover, LS2's testimony was important to provide the jury with the necessary context to understand both the

timing and circumstances involving the revelations and the context surrounding the statements that defendant made at the family meeting and to investigating officers. See *id*. LS2's testimony about the other acts was more than marginally probative, and there was little danger that the jury would give it unfair weight given its clear probative value. See *Mills*, 450 Mich at 75-76.

Finally, defendant argues that MCL 768.27a violates due process by allowing the prosecutor to establish a crime through propensity evidence. This Court recently rejected the argument that MCL 768.27a is unconstitutional, and specifically held that the statute did not violate due process because it did not change the quantum of proof or the probative value of the evidence that the prosecution had to present. See *People v Muniz*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355977); slip op at 12. Therefore, that argument is meritless.

Defendant has not established that the trial court plainly erred when it allowed LS2 to testify about the other acts that defendant directed at her in the pool. See *Carines*, 460 Mich at 763. Defense counsel had no obligation to make a meritless objection to LS2's testimony or make a meritless argument that the statute was unconstitutional. See *Clark*, 330 Mich App at 426. Consequently, defendant has not shown that defense counsel's failure to object amounted to ineffective assistance of counsel.

## VII. SUFFICIENCY OF THE EVIDENCE

Defendant also argues the prosecution failed to present sufficient evidence to warrant his conviction. We disagree.

## A. STANDARD OF REVIEW

We review de novo a defendant's challenge to the sufficiency of the evidence. *Clark*, 330 Mich App at 436. We look at the evidence "in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *Id*. (quotation marks and citation omitted).

## B. LAW AND ANALYSIS

"The elements of CSC-I under MCL 750.520b(1)(a) are that (1) the defendant engaged in sexual penetration with another person and (2) the other person was under 13 years of age." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). Defendant maintains that the prosecution did not present "even one witness from the pool, or otherwise at the home, who saw the alleged assault." In making this argument, defendant ignores the fact that LS1 testified on behalf of the prosecution; she told the jury that she was under 13 years of age and that defendant digitally penetrated her vagina while in the pool on the date at issue. Michigan law does not require that a victim's testimony be corroborated in order to establish the elements of a sex offense. See *People v DeLeon*, 317 Mich App 714, 719; 895 NW2d 577 (2016); see also MCL 750.520h.

Defendant also maintains that it was simply not plausible that he "assaulted his niece in broad daylight and in front of multiple people." As our Supreme Court has stated, "absent exceptional circumstances, issues of witness credibility are for the jury." See *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998). Conflicting testimony or questions of credibility are not sufficient grounds for granting a new trial unless the testimony was so impeached that it had

no probative value, or it contradicted indisputable physical facts, or it defied physical realities. See *Roper*, 286 Mich App at 89. Both LS1 and LS2 testified that defendant made physical contact with them in the pool that was sexual in nature. Although there was evidence that others were in close enough proximity to have observed untoward conduct, there was also evidence from which a reasonable jury could infer that those witnesses were distracted. There was other evidence that defendant engaged in the conduct under cover of playing pool games, and beneath the surface of the water. LS1's testimony was not so implausible that it could be said to have no probative value, or that it conflicted with indisputable physical facts, or otherwise defied physical reality. See *Lemmon*, 456 Mich at 642-644. Accordingly, the "question being one of credibility posed by diametrically opposed versions of events," this Court must leave the test of credibility with the jury. *Id*. at 646-647.

We reject defendant's sufficiency-of-the-evidence claim because the prosecution presented evidence from which a reasonable jury could find beyond a reasonable doubt that defendant committed each of the elements of CSC-I. See *Clark*, 330 Mich App at 436.

## VIII. CUMULATIVE ERROR

Defendant finally asserts that, even if no one error warranted a new trial by itself, the cumulative effect of the errors that he identified warrant a new trial. We disagree.

The cumulative error doctrine is part of a reviewing court's harmless-error analysis. See *LeBlanc*, 465 Mich at 591 n 12. The doctrine recognizes that the cumulative effect of several minor errors may warrant a new trial even though no one error warranted a new trial on its own. See *People v Cooper*, 236 Mich App 643, 659-660; 601 NW2d 409 (1999). In assessing whether multiple errors undermined confidence in the trial, reviewing courts must examine only the unfair prejudice caused by actual errors. See *LeBlanc*, 465 Mich at 591 n 12. To the extent that defendant identified any errors at all, the errors were minor and—even if aggregated—did not prejudice his trial. See *Cooper*, 236 Mich App at 659-660.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Thomas C. Cameron

-18-